# UNITED STATES DISTRICT COURT
for the
District of New Mexico

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Victor GONZALES

Case No. 20MR1587

FILED
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Victor GONZALES, born in 1978, currently in custody at the Cibola County Detention Center
See Attachment A (incorporated by reference)

located in the _____ District of _____ New Mexico _____, there is now concealed *(identify the person or describe the property to be seized)*:

The DNA of Victor GONZALES, collected via 2 buccal swab.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Being felon in possession of a firearm and ammunition. |

The application is based on these facts:
See the attached affidavit of DEA Task Force Officer Erick D. Castañeda, which is incorporated by reference and has been reviewed and approved by AUSA Nikki Tapia-Brito.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Erick D. Castañeda, DEA Task Force Officer
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
Telephonically Sworn and Electronically Submitted *(specify reliable electronic means)*.

Date: 10/29/2020

*Judge's signature*

City and state: Albuquerque, New Mexico

Hon. Laura Fashing, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

I, Task Force Officer (TFO) Erick D. Castañeda of the Drug Enforcement Administration (DEA), being first duly sworn, herby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal procedure for a warrant subject to search the body of Victor GONZALES (born in 1978), to collect deoxyribonucleic acid (DNA) samples by way of buccal swabs. I believe GONZALES's DNA may be present on a firearm and packages of drugs located during a traffic stop conducted by Bernalillo County Sheriff's Office Deputies on September 12, 2020.

2. GONZALES is currently in custody of the United States Marshals Service, in the District of New Mexico. GONZALES and a codefendant, David GONZALES, were charged by complaint on September 25, 2020, with violations of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), that being possession with intent to distribute a mixture and substance containing methamphetamine; 18 U.S.C. § 924(c), that being possession of a firearm in furtherance of a drug trafficking crime; and 18 U.S.C. § 922(g)(1), that being felon in possession of a firearm and ammunition. At a preliminary hearing on October 13, 2020, United States Magistrate Judge Jerry H. Ritter found probable cause for 18 U.S.C. § 922(g)(1), that being felon in possession of a firearm and ammunition against GONZALES.

3. Because this affidavit is submitted for the limited purpose of seeking a search warrant to collect DNA samples from GONZALES, I have not set forth each and every fact learned during the course of this investigation. I have set forth only the facts that I believe are necessary to establish the foundation for an order authorizing the requested search warrant.

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

### PURPOSE OF THE AFFIDAVIT

4.  As set forth herein, there is probable cause to believe that Victor GONZALES committed violations of 18 U.S.C. § 922(g)(l), that being felon in possession of a firearm and ammunition. Because there is probable cause to believe Victor GONZALES possessed the gun and drugs relevant to this case, there is also probable cause to believe that Victor GONZALES's DNA will be found on pieces of evidence collected in this investigation. Therefore, there is probable cause to collect a DNA sample from GONZALES via buccal swab in order to compare it with samples collected from the lawfully seized evidence in this case.

### AFFIANT'S RELEVANT TRAINING AND EXPERIENCE

5.  I have been assigned as a Task Force Officer (TFO) to the Drug Enforcement Administration (DEA) since June 2020. Prior to that I worked as a full-time sworn Law Enforcement Officer with the Bernalillo County Sheriff's Department, and have been so employed since June 2015. As such, I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request arrest and search warrants. Furthermore, I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and I am empowered by law to conduct investigations and to make arrests for criminal offenses, to include those enumerated in 18 U.S.C. § 2516.

6.  I have received training on surveillance and counter-surveillance operations, undercover operations, confidential source operations, criminal law, and investigations involving federal electronic surveillance statutes, drug identification, and search warrant executions. I have also spoken with other law enforcement officers with expertise and experience in these areas.

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

7. My experience as a Sheriff's Deputy and TFO includes, but is not limited to, conducting surveillance, interviewing witnesses, writing affidavits for and executing search and seizure warrants, debriefing defendants and confidential sources and working with undercover agents and informants. I have received training and have experience in the investigation of violations of the federal drug and money laundering laws, including the offenses listed below. As a result, I am familiar with matters including, but not limited to, the means and methods used by drug traffickers and drug trafficking organizations to purchase, transport, store, and distribute illegal drugs and to hide profits generated from those transactions. I also have experience in analyzing and interpreting drug codes and cryptic dialogues used by drug traffickers.

8. As a result of my training and experience, I know that firearms are tools of the trade and instrumentalities of the crime of drug trafficking. Specifically, drug-traffickers often keep firearms on their person, in their residence, and/or in their vehicles for the purpose of deterrence and protection of their drug supplies and drug proceeds. I am also aware that when individuals handle firearms, their DNA is often left behind and detectable by lab technicians. Similarly, when individuals handle packages of drugs, their DNA is often left behind and detectable by lab technicians.

9. Through my training and experience, I am aware that human saliva and droplets of human sweat contain DNA, which can be used to help identify an individual, and that DNA from human saliva or sweat droplets can potentially be recovered and used to help identify an individual, after the individual comes in contact with a surface or an object.

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

### FACTS AND CIRCUMSTANCES ESTABLISHING PROBABLE CAUSE

<u>The Traffic Stop</u>

10. On September 12, 2020, Bernalillo County Sheriff's Office (BCSO) Deputy Austin Young was on patrol in a fully marked vehicle in full uniform displaying his badge of office.

11. At approximately 0016 hours, Deputy Young was traveling southbound on Edith just south of Montano when he observed a dark color sedan pull out onto Edith from a private driveway. Deputy Young observed the vehicle did not have operating taillights causing the rear end to be completely dark. Deputy Young positioned himself behind the dark sedan, which was a grey Honda Sedan bearing New Mexico license plate 177WPR. A search of the NCIC database indicated the registered owner of the 2009 Honda sedan is P.W., a resident of Albuquerque, New Mexico.

12. Deputy Young followed behind the vehicle as it approached Comanche Rd NE where it came to a stop at the red light. The driver of the vehicle had failed to engage the rear facing taillights up to this point. As the light turned green, the driver made an eastbound turn onto Comanche Rd, still failing to illuminate the taillights. At this point, Deputy Young engaged his visual emergency equipment on his fully marked sheriff's vehicle. The driver began to slow down, however he did not come to a stop and continued to travel eastbound on Comanche around the bend in the roadway, passing the "Fuel Stop" parking lot at 600 Comanche and the parking lot of the business located at 612 Comanche. He eventually came to a stop near Comanche and Rankin Ln. Deputy Young requested an additional deputy to respond to the location of the traffic stop given the fact the vehicle took such an unusually long time to come to a stop.

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

<u>Interaction with the Driver, Victor Gonzales</u>

13. Deputy Young approached the vehicle and made contact with the occupants of the vehicle. Deputy Young informed the driver, who was later identified as VICTOR GONZALES (YOB: 1978), of the reason for the traffic stop (driving without taillights engaged) and asked him for his driver's license, registration and proof of insurance. VICTOR GONZALES stated that he did not have registration or insurance for the vehicle and that it was his brother's car. He also stated that the vehicle had automatic headlights that would come on at night, but he did not realize that the taillights had not come on.

14. Deputy Young observed that VICTOR GONZALES did not want to make eye contact, he appeared to be sweating heavily, and his hands were shaking. Noticing these outward signs of nervousness, Deputy Young asked VICTOR GONZALES why he took so long to come to a stop from where he initially attempted to conduct a traffic stop. VICTOR GONZALES stated that he was just very nervous and that he was trying to figure out what to do since in the past he has run from the police. Deputy Young asked VICTOR GONZALES why he was nervous. VICTOR GONZALES was unable to give a clear answer and just stated that the police make him nervous. While speaking with the VICTOR GONZALES, Deputy Young noticed an obvious bulge coming from under the shirt of the front passenger in the vehicle, near his waistband. The passenger was later identified as DAVID GONZALES (YOB: 1979). Deputy Young asked VICTOR GONZALES if there were any weapons in the vehicle, and, upon asking that question, he noticed that VICTOR GONZALES paused and stared straight ahead out the front windshield of the vehicle. After a moment of time passed, the VICTOR GONZALES stated "no" in a very soft tone. Noting the pause, Deputy Young asked VICTOR GONZALES if he was sure since the

5 | Page

AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

way that he (Victor Gonzales) answered the question did not seem to Deputy Young to be a very confident answer. In response, VICTOR GONZALES stated, "No I don't think so, there shouldn't be." He then recanted on the statement and advised that there were several knives in his safe on the back floor board of the vehicle.

15. Deputy Young asked him if there were any other weapons in the vehicle aside from the knives, and he again appeared to be very nervous, moving around in his seat and looking straight forward out the front windshield of the vehicle.

Interaction with the Passenger, DAVID GONZALES

16. Deputy Young asked the passenger, DAVID GONZALES, what he had under his shirt. DAVID GONZALES initially stated that it was just his belt and, as he said so, began to push down on the bulge and adjust the way he was sitting in the vehicle. Deputy Young asked DAVID GONZALES to lift his shirt so he could see what was in his waistband. DAVID GONZALES began to lift his shirt, however, according to Deputy Young, he did so in a way that attempted to conceal the object in his shirt. Specifically, DAVID GONZALES would only show his belt. As DAVID GONZALES did this, Deputy Young was able to see a black rubbery handle of a firearm and the outline of a nylon style holster. Deputy Young began to give DAVID GONZALES loud verbal commands not to reach for the gun. DAVID GONZALES initially began to pull down on his shirt towards the area where Deputy Young observed the firearm was while simultaneously stating "no, no it's not a gun."

17. At this point, Deputy Young drew his department issued firearm, stepped back slightly from the vehicle, and continued giving DAVID GONZALES commands to keep his hands up and away from the firearm. During this sequence of events, Deputy Young noticed that DAVID

6 | Page

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

GONZALES had several objects in his hands, which appeared to be syringes and several small blue baggies. Before picking his hands up, DAVID GONZALES dropped several of the blue baggies down between the center console and passenger seat, and then proceeded to pick his hands up. Deputy Young maintained a visual of DAVID GONZALES and continued to give him loud verbal commands, to which he complied.

### Backup Arrives

18. Deputy T. Gregory arrived on scene and began to assist with the situation. Deputy Young informed Deputy Gregory that DAVID GONZALES was armed with a firearm, which was in his waistband. Deputies gave DAVID GONZALES instructions on how to exit the vehicle, to which he complied. DAVID GONZALES was then detained in handcuffs by Deputy Gregory. During the subsequent search of his person, DAVID GONZALES was found to have a fully loaded Taurus "Judge" (45 Colt) revolver inside his waistband, which was inside of a nylon style holster with a quick release buckle.

### Back to the Driver

19. Deputy Young asked VICTOR GONZALES to step out of the vehicle, as he did Deputy Young observed VICTOR GONZALES drop a small clear baggie which appeared to contain a white crystal-like substance from his hand onto the center console area. Deputy Young asked VICTOR GONZALES to drop what he had in his hands. VICTOR GONZALES complied by dropping his cell phone on the seat and placing his wallet onto the center console area, an action that deputies interpreted as an attempt to conceal the baggie which had dropped from his hand earlier. VICTOR GONZALES was detained in handcuffs at this time.

20. While being handcuffed, VICTOR GONZALES made the statement that he was aware of the gun being in the vehicle and said that he was not going to say anything because he did not want to "snitch." Deputies conducted a pat down for weapons which revealed that VICTOR GONZALES was wearing a black nylon shoulder style holster which had the magazine pouch still attached to the harness. Deputy Young asked VICTOR GONZALES why he was wearing the shoulder harness, and he responded that he uses it to keep his wallet in. Deputies were skeptical of this claim because wallet found on VICTOR GONZALES' possession was much too large to fit inside the magazine pouch. VICTOR GONZALES was placed in the back seat of Deputy Young's patrol vehicle at this time.

The Car Search

21. Due to the fact that VICTOR GONZALES was not able to provide valid registration or a current proof of insurance, and he was driving on a suspended driver's license, deputies determined that that he was not able to safely or legally operate the vehicle on New Mexico highways. Consequently, the vehicle was towed. A pre-two inventory search of the vehicle of the vehicle revealed narcotics and ammunition. Specifically, deputies located the following:

- On the front driver's seat two (2) rounds of .45 caliber Colt ammunition. This ammunition was consistent with the ammunition found in the firearm located in DAVID GONZALES' waist band. VICTOR GONZALES had been sitting on this ammunition.

- The baggie that VICTOR GONZALES had dropped from his hand upon exiting the vehicle was discovered to contain a white crystal-like substance, consistent with that of methamphetamine. This substance was not weighed individually. It was

8 | Page

bagged along with the rest of the suspected methamphetamine found in the vehicle yielding a total of 25.0 grams.

- In the center console of the vehicle was a large zip lock baggie, which also contained a white crystal-like substance. This substance was not weighed individually. It was bagged along with the rest of the suspected methamphetamine found in the vehicle yielding a total of 25.0 grams. The substance tested presumptive positive for methamphetamine using a field test kit.

- On the front passenger side floorboard was a syringe containing a brown liquid substance that tested presumptively positive for heroin. The liquid measured 40 units of a syringe. Deputy Young transferred the liquid to a vial which yielded 9.7 gross grams.

- In the front passenger seat was a piece of paper containing approximately 8.4 gross grams of a green leafy substance that tested presumptively positive for marijuana.

- On the center console of the vehicle, in plain view, deputies located a small digital scale, which appeared to contain residue of both a white crystal-like substance as well as a brown substance. The residue on this scale was not field tested.

- In the back seat of the vehicle, under a large pile of clothing and other items, was a black digital safe. The safe was open, and deputies located inside it a box of .45 caliber Colt ammunition, consistent to the ammunition previously found in the driver's seat of the vehicle as well as in the firearm possessed by DAVID GONZALES.

- In the back driver's side seat of the vehicle, inside of a black backpack, were several small clear plastic baggies, which Deputy Young recognized to commonly be used

as packaging for the distribution of narcotics. These items were located along with a second digital scale.

Statement of VICTOR GONZALES

22. VICTOR GONZALES was read Miranda warnings, which he stated he fully understood and agreed to speak to Deputy Young. Deputy Young asked VICTOR GONZALES why he had taken so long to pull over. VICTOR GONZALES stated that it was because he gets nervous around police. Deputy Young asked him about the firearm and whether or not he was aware that it was in the vehicle. VICTOR GONZALES stated that he was aware of it but that it did not belong to him. Further, VICTOR GONZALES stated that the vehicle belonged to his brother and that he has seen the firearm in the vehicle at a prior time, however he did not know it was in the vehicle on this occasion. VICTOR GONZALES stated that the passenger had reached under the passenger seat and put the firearm in his waistband when they were being pulled over.

23. Deputy Young asked VICTOR GONZALES if he was allowed to be in possession of a firearm or if he was a prohibited possessor. VICTOR GONZALES responded that he was a convicted felon and was not allowed to possess a firearm.

24. Deputy Young also asked VICTOR GONZALES about the safe that was found in the vehicle. VICTOR GONZALES stated that the safe belonged to him and that he had brought it into the vehicle with him when he borrowed the vehicle. VICTOR GONZALES further stated that he had not at any point left the safe in the vehicle unattended. Deputy Young asked him about the ammunition found in the safe, and he stated that he was not sure how it got in there. VICTOR GONZALES was questioned about the narcotics found in the vehicle, and he responded that he knew what the type of narcotic was and took responsibility for the small baggie that had fallen

10 | P a g e

from his hand as he stepped out of the vehicle. Gonzales stated that he was not aware of the other narcotics inside the vehicle. Gonzales also stated that the backpack in which the baggies and digital scale were found belonged to him.

Statement of DAVID GONZALES

25.     After receiving and waiving his Miranda warning, DAVID GONZALES stated that the firearm did not belong to him. In the course of that denial, DAVID GONZALES stated "that dude shouldn't have put the gun in my pants, that's not right." Deputy Young asked him who he was referring to, and he initially was hesitant to answer; however, he later stated that VICTOR GONZALES had told him to put the gun in his pants and hide it because VICTOR GONZALES afraid that the police were going to search the car. DAVID GONZALES stated that the syringes were fully loaded with what he assumed was heroin, and he admitted that he had picked them up from the floorboard of the vehicle along with the small blue baggie that he had dropped while being detained. Deputy Young asked DAVID GONZALES if he was allowed to be in possession of the firearm or if he was a prohibited possessor, to which DAVID GONZALES stated that he was unsure however a check of court records through New Mexico Courts confirmed that David had plead guilty and was convicted of the Felony charge of Receiving/Transferring a stolen motor vehicle and Possession of a controlled substance on December 7th, 2018 (Case number D-202-CR-201704075).

Drug Weights

26.     TFO Castaneda and Yurchenko weighed and tested the crystal like substance in the clear plastic baggie. The contents weighed approximately 25.0 gross grams. This substance also tested positive for the presence of methamphetamine. In my training and experience, 25 gross

grams of methamphetamine is inconsistent with personal use and instead indicative of possession with the intent to distribute. Agents received a positive response for presence of heroin from a cylinder, containing a brown liquid substance approximately 9.7 gross grams of heroin. Agents also tagged approximately 8.4 grams of suspected marijuana.

Interstate Nexus

27. Based on my training and experience and when Agents performed a function test on the black Taurus "Judge" 45/410 revolver, the firearm appeared to function as designed. Furthermore, the firearm was ammunition was not manufactured in the state of New Mexico however, it was recovered in the state of New Mexico therefore affecting interstate commerce before it was possessed by DAVID GONZALES.

Criminal History

28. A check of court records through New Mexico Courts confirmed that VICTOR GONZALES had pleaded guilty and was convicted of the felony charge of Receiving/Transferring a stolen motor vehicle on March 7th, 2018 (Case number D-202-CR-201802247).

29. Based on the foregoing, there is probable cause to believe that the DNA samples sought through this warrant will provide evidence pertaining to violations of 18 U.S.C. § 922(g) Felon in possession of a firearm and ammunition.

30. The evidence listed above is all in the lawful custody of the DEA. Based on my training and experience, I know that it was collected and has been stored in a manner such that DNA evidence present on the evidence at the time of collection will still be present on the evidence at this time. Contemporaneously with the execution of this warrant, investigators will obtain

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

sample swabs from the firearms and drug packaging described above. Those samples will be compared with the DNA samples collected from GONZALES pursuant to the authorization sought in this application.

31. The buccal swab samples from GONZALES will be obtained pursuant to approved medical procedures, without unnecessary discomfort to GONZALES, and under circumstances where he will feel little or no pain or embarrassment.

32. Victor GONZALES can be described as Hispanic male adult, born in 1978. He has short, black hair with brown eyes; is approximately six feet, two inches (6'02") in height; and weighs approximately 200 pounds. He is currently in the custody of the United States Marshals Service at the Cibola County Detention Facility in the District of New Mexico.

## CONCLUSION

33. Based on the above information, there is probable cause to believe GONZALES committed violations of 18 U.S.C. § 922(g)(1), that being felon in possession of a firearm and ammunition. Therefore, I am seeking authorization under Rule 41 of the Federal Rules of Criminal Procedure to collect two DNA samples from Victor GONZALES, via buccal swab, to compare with any DNA that is found on the evidence seized in this matter.

34. This affidavit has been reviewed and approved by Assistant United States Attorney Niki Tapia-Brito.

# AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

Respectfully submitted,

Erick D. Castaneda,
DEA Task Force Officer

Telephonically sworn and electronically signed on October 29, 2020:

_____
THE HONORABLE LAURA FAHSING
UNITED STATES MAGISTRATE JUDGE

Attachment A --Photo of Victor Gonzales (born 1978)

